UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH FLANIGAN,

      Plaintiff,

v.

COUNTY OF OAKLAND and S. PANIN,

      Defendant.

Case No. 15-12504
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS [5]**

Plaintiff Joseph Flanigan alleges that an Oakland County Sheriff's Deputy, Scott Panin, tased, pepper-sprayed, and punched him for no reason. So Flanigan sued, asserting an excessive force claim under 42 U.S.C. § 1983 against Panin and Oakland County.

Before the Court is Defendants' motion to dismiss each of Flanigan's claims. (Dkt. 5.) After careful consideration of the briefs and thorough review of the pleadings and public record, the Court finds that oral argument will not aid in resolving the pending motion. *See* E.D. Mich. LR 7.1(f)(2). The Court agrees with Defendants that Flanigan fails to adequately allege a *Monell* claim against Oakland County, so Count II will be dismissed without prejudice. But Count I against Panin will survive the motion to dismiss, as the Court disagrees with Defendants that Flanigan's guilty plea to resisting and obstructing Panin during the same incident bars his suit entirely.

## I.

### A.

Plaintiff Joseph Flanigan alleges the following in his complaint. On July 21, 2013, he was walking around Clarkston, Michigan, "minding his own business." (Dkt. 1, Compl. ¶ 9.) As he waited for his mother to pick him up, Defendant Scott Panin, an Oakland County Sheriff's deputy, approached. (*Id.* ¶¶ 9–10.) Panin did not speak to Flanigan or "issue any commands," so Flanigan "proceeded to go away." (*Id.* ¶¶ 10–11.)

Suddenly, without warning, Panin went after Flanigan and tased him "multiple times." (*Id.* ¶ 12.) After handcuffing Flanigan, Panin also pepper sprayed him. (*Id.* ¶ 13.) Panin then punched Flanigan in the head while Flanigan was on the ground. (*Id.* ¶ 14.) Panin also kneed Flanigan in the back, causing him to vomit. (*Id.* ¶ 15.) Flanigan was then arrested and taken to Oakland County Jail. (*Id.* ¶ 16.)

### B.

Flanigan's complaint declined to mention that on August 29, 2013, because of charges stemming from the same incident, he pled guilty to possession of marijuana and a violation of Mich. Comp. Laws § 750.81d(1), which makes it a felony to assault, batter, wound, resist, obstruct, oppose, or endanger a person "performing his or her duties." (*See* Dkt. 7, Pl.'s Resp. Ex. B.) In documents filed with the Oakland County Circuit Court, Flanigan described this as the factual basis for his plea: "I ran away from the police and had marijhuana [sic] – in my possession." (*Id.*) (Although Defendants attack the sufficiency of the Complaint, the Court may consider other documents, such as Flanigan's guilty plea, because it is a public record. *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003), *abrogated on other grounds by Merck & Co. v. Reynolds*, 559 U.S. 633 (2010).)

Flanigan filed his complaint in this Court on July 14, 2015. (Dkt. 1.) Count I asserts a § 1983 claim against Panin for his alleged use of excessive force. (Compl. ¶¶ 18–23.) Count II asserts a *Monell* claim against Oakland County for allegedly permitting "customs, practices, and/or polices" that resulted in Panin's alleged constitutional violation. (Compl. ¶¶ 24–30.) Defendants filed their motion to dismiss on August 20, 2015. (Dkt. 5.) The motion is fully briefed (*see* Dkts. 5, 7–8).

## II.

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility that a defendant . . . acted unlawfully," it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

3

## III.

### A.

Defendants first argue that *Heck v. Humphrey*, 512 U.S. 477 (1990), bars Flanigan's claim because he pled guilty to charges stemming from the same incident for which he now seeks damages. (Dkt. 5, Defs.' Mot. at 4.) The Court disagrees.

In *Heck*, the Supreme Court held that a plaintiff cannot assert a § 1983 claim that would "necessarily imply the invalidity" of an underlying criminal conviction. *Heck*, 512 U.S. at 487. The Court has since noted that in *Heck*, it "stress[ed] the importance of the term 'necessarily.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). "The mere fact that the conviction and the § 1983 claim arise from the same set of facts is irrelevant if the two are consistent with one another." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). However, a § 1983 claim could conflict with a plaintiff's criminal conviction where (1) "the criminal provision makes the lack of excessive force an element of the crime" or (2) "excessive force is an affirmative defense to the crime." *Id.*

Defendants say that the first scenario applies here. (Defs.' Mot. at 7.) In particular, Flanigan pled guilty to Mich. Comp. Laws § 750.81d(1), which provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony." Notably, that provision does not expressly include as an element a lack of excessive force. Defendants argue, however, that *People v. Moreno*, 814 N.W.2d 624 (Mich. 2012), clarified that the lawfulness of the officer's conduct (and thus the absence of excessive force) is an element of that provision. In *Moreno*, the Michigan Supreme Court held that Mich. Comp. Laws § 750.81d(1) did not "abrogate the common-law right to resist unlawful arrests." *Id.* at 634. As the Michigan Court of

4

2:15-cv-12504-LJM-SDD   Doc # 10   Filed 01/26/16   Pg 5 of 10   Pg ID 123

Appeals later observed, the *Moreno* court "did not explicitly state, in so many words, that the lawfulness of the officers' actions is an 'element' of resisting or obstructing a police officer," but "it is clear that under *Moreno*, as at common law, the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d." *People v. Quinn*, 853 N.W.2d 383, 388 (Mich. Ct. App. 2014).

The Court finds it unnecessary to resolve whether *Moreno and Quinn* have made a lack of excessive force an element of Mich. Comp. Laws § 750.81d(1). Even assuming that to be true, Flanigan's excessive force claim would not necessarily imply the invalidity of his guilty plea. As a Sixth Circuit panel recently noted, for *Heck* to apply, "both the § 1983 claim and the conviction must arise out of the same events." *Parvin v. Campbell*, — F. App'x —, 2016 WL 97692, at *4 (6th Cir. Jan. 8, 2016) (citation omitted); *see also Cummings v. City of Akron,* 418 F.3d at 682–83 (6th Cir. 2005) (applying *Heck* to bar an excessive force claim because "[t]he struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined."). In other words, "a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance." *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008) (citing cases). Any conclusion otherwise would mean that "once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *See VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006).

Here, Flanigan's complaint and the factual basis of his guilty plea suggest that his excessive force claim is not "inextricably intertwined" with his plea. When Flanigan pled guilty to marijuana possession and resisting Panin, he specified this as the factual basis for his plea: "I

ran away from the police and had marijhuana [sic] – in my possession." (Pl.'s Resp. Ex. B.) Similarly, in his complaint, Flanigan alleges that once Panin approached, before Panin used any force, Flanigan "proceeded to go away from" Panin. (Compl. ¶¶ 10–11.) The Complaint goes on to allege that Panin "proceeded to go after Plaintiff and tased Plaintiff multiple times without warning and without any lawful justification whatsoever." (*See* Compl. ¶ 12.) If Flanigan's allegations ended there, assuming that his plea of guilty to Mich. Comp. Laws § 750.81d(1) compels the conclusion that Panin's conduct was lawful at the time that Flanigan resisted, *Heck* would bar the excessive force claim.

But the allegations do not end there. Instead, Flanigan alleges that once he was subdued, Panin continued to use force. Flanigan claims that Panin pepper sprayed him after he was handcuffed and that Panin punched and kneed him while he was on the ground. (*See* Compl. ¶¶ 13–14.) Thus, drawing all reasonable inferences in Flanigan's favor, the conduct underlying his guilty plea—running away from Panin—came before much of the basis of his excessive force claim. In other words, even if Panin's conduct was lawful at the time of Flanigan's resistance, it did not necessarily remain lawful after he was subdued.

Defendants argue that the notion that *Heck* requires looking to the factual basis of a guilty plea, not just the fact of the plea itself, is "novel" and "bereft of any legal support or authority." (Dkt. 8, Defs.' Repl. at 1–2.) But the Sixth Circuit has applied *Heck* in exactly that way. For example, in *Lucier v. City of Ecorse*, 601 F. App'x 372, 374–75 (6th Cir. 2015), the Plaintiff claimed that officers used excessive force when they tased him and slapped him in his basement before bringing him to their patrol car, where they tased him again. Though the plaintiff pled guilty to resisting arrest based on that incident, the Court held that *Heck* did not apply because "[t]he factual basis of [the] guilty plea was never specified." *Id.* at 377. Thus, because it was

6

possible that the guilty plea "may well have been wholly based on" conduct after the officers' force in the basement, "a judgment in Plaintiff's favor on his § 1983 excessive force claims would not necessarily invalidate his previous guilty plea." *Id.* at 377.

The same follows here. Flanigan's complaint and guilty plea are consistent with the conclusion that his guilty plea was based wholly on conduct—resisting Panin by running away— that occurred before Panin allegedly subdued him and used excessive force. As Flanigan's excessive force claim, if successful, would not necessarily invalidate his guilty plea, *Heck* does not apply here.

**B.**

Defendants next argue that Flanigan's municipal liability claim against Oakland County is too vague and conclusory to withstand a motion to dismiss. (Defs.' Mot. at 10.) The Court agrees.

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Flanigan's complaint alleges that Oakland County permitted the following policies or customs that resulted in the alleged constitutional violations: (1) "[f]ailing to adequately train and/or supervise its police officers so as to prevent violations of citizens' constitutional rights"; (2) "[f]ailing to adequately train and/or supervise police officers regarding the proper use of force"; (3) "[f]ailing to adequately supervise, review, and/or discipline police officers whom Defendant County of Oakland knew or should have known were violating or were prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in illegal conduct"; and (4) "[f]ailing to adequately train and/or supervise its

7

police officers in the proper policies and procedures for effectuating an arrest without the use of excessive force." (Compl. ¶ 27.)

Flanigan characterizes these as "detailed factual allegations." (Pl.'s Resp. at 14.) But they are not. The second and fourth allegations noted above say essentially the same thing: Oakland County failed to adequately train or supervise its deputies to prevent the type of violation that Flanigan alleges happened here, excessive force during an arrest. The first allegation simply states that more broadly: Oakland County failed to train or supervise its officers to prevent violations of constitutional rights. These are nothing more than "formulaic recitation[s]" of one of the elements of Flanigan's claim, insufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678, 681. More specifically, one way a plaintiff can demonstrate an illegal policy is by showing the "existence of a policy of inadequate training or supervision." *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)). And here, Flanigan has alleged nothing more than that.

Flannigan's third allegation—that Oakland County failed to supervise, review, or discipline officers the county "knew or should have known were violating or were prone to violate citizens' rights" fares no better. This too simply recites in conclusory fashion what is generally required to show a municipality's deliberate indifference: "proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures," *Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005) (citation omitted). Flanigan does not say when or how Oakland County learned of the prior unconstitutional acts. Nor does he identify the acts or say how Oakland County handled them. Thus, Flanigan has again simply recited an element of his claim—deliberate indifference is an element of inadequate training and inadequate supervision claims of municipal liability. *See Amerson v. Waterford Twp.*, 562 F.

8

App'x 484, 492 (6th Cir. 2014) ("Similar to the failure-to-train inquiry . . . to sustain a failure-supervise claim, the plaintiff must show that the city acted with deliberate indifference to the risk of [the constitutional violation] and that its deliberate indifference was the 'moving force' behind the assault") (internal quotation marks omitted).

Flanigan cites only one case to urge that his allegations are sufficient to withstand Defendants' motion to dismiss, an unpublished opinion in *McPeak v. City of Flint, et al,* No. 10–14110 (E.D. Mich. filed Oct. 13, 2010). (*See* Pl.'s Resp. at 15; Pl.'s Resp. Ex. D.) But that opinion is not binding on this Court. And *McPeak* was one of many cases in which the law firm representing Flanigan has made substantially similar boilerplate allegations against a municipality. Granted, the court in *McPeak* found these allegations sufficient to withstand a motion to dismiss. *Id.* Yet as another judge in this district later observed, the opinion in *McPeak* is unpersuasive because it relied on *Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008), which did not address the sufficiency of the relevant municipal liability claim under the *Twombly* and *Iqbal* standard. *See Curney v. City of Highland Park*, No. 11-12083, 2012 WL 1079473, at *4 (E.D. Mich. Mar. 30, 2012). Thus, the court in *Curney* dismissed a § 1983 municipal liability claim based on allegations nearly identical to Flanigan's, noting that a plaintiff "cannot allege a municipal liability claim hoping that discovery will reveal facts to support the claim." *Id.* at 5; *but see Amerson v. Twp. of Waterford*, No. 12-10375, 2012 WL 5948044, at *3 (E.D. Mich. Nov. 28, 2012) (denying motion for judgment on the pleadings for substantially similar allegations); *Young v. City of Highland Park*, No. 11-12780, 2011 WL 5215154, at *3 (E.D. Mich. Nov. 2, 2011) (denying motion to dismiss for substantially similar allegations). The Court finds the approach in *Curney* is more persuasive than *McPeak* because it is more consistent with the standards under *Twombly* and *Iqbal*. *See Holliday v. Wells Fargo Bank, NA*, 569 F. App'x 366,

372 (6th Cir. 2014) ("It is well settled that a party cannot 'use the discovery process to obtain [the facts it needs to support its claim] after filing suit'") (alterations in original) (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011)).

In sum, because the Court does not have to accept as true Flanigan's "legal conclusion[s] couched as a factual allegation[s]," *Iqbal*, 556 U.S. at 678, the Court does not find it plausible that any municipal custom, policy, or practice was the moving force behind Deputy Panin's alleged use of excessive force. As no factual allegations support Flanigan's legal conclusions surrounding his claim against Oakland County, he has failed to state a claim upon which relief can be granted.

## IV.

For the reasons stated, Defendants' motion to dismiss (Dkt. 5) is DENIED as to Count I and GRANTED as to Count II. Count II, and Defendant Oakland County, are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  January 26, 2016


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 26, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson